IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NAOMI MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: 2:14-CV-002-WHA |
| | ) | |
| KENAN TRANSPORT, LLC, | ) | (WO) |
| | ) | |
| Defendant. | ) | |

ORDER

This cause is before the court on Defendant Kenan Transport, LLC's Third, Fourth, Fifth, Sixth, Seventh, and Eighth Motions in Limine (Docs. # 51–55, 65). Also before the court are the Plaintiff's Response to the Motions in Limine (Doc. # 71) and the Defendant's Reply thereto (Doc. # 76).

**A. Defendant's Third Motion in Limine**

In its Third Motion in Limine (Doc. # 51), the Defendant seeks to prevent the Plaintiff from making any "Golden Rule" arguments, asking jurors to place themselves in the position of the Plaintiff, and to prevent the Plaintiff from asking the jurors to consider the danger that other individuals could be injured in a similar manner to the events underlying this case. The Plaintiff responds that she does not seek to make arguments asking the jurors to place themselves in her shoes, rather she only intends to offer arguments stating that "careless and inattentive driving endangers other drivers." (Doc. # 71 at 2.) The Defendant responds to the Plaintiff's position by suggesting that a discussion of danger to the general public is a veiled Golden Rule argument.

The parties and the court agree that any argument asking the jurors to place themselves in the Plaintiff's position or the Plaintiff's shoes is improper. *See Johnson v. Howard*, 24 F. App'x

1

480, 487 (6th Cir. 2001) ("Those circuits that have considered use of 'Golden Rule' arguments have 'universally condemned' them as improper because they invite decision based on bias and prejudice rather than consideration of facts.") (citations omitted). Arguments stopping short of asking jurors to put themselves in the Plaintiff's position may be permissible, however, so long as they do not improperly appeal to the jury's sympathy or passions. *Cf. Allen v. Mobile Interstate Piledrivers*, 475 So. 2d 530, 537–38 (Ala. 1985) (finding it was not reversible error to allow an argument discussing "unspecified imaginary individuals" because it "[did] not invite the jurors to place *themselves* in plaintiff's position").

The Third Motion in Limine expressly asked the court to prohibit any argument that the jurors should place themselves in the Plaintiff's position or the Plaintiff's shoes. (Doc. # 51 at 1.) To that extent, the Motion will be GRANTED. More general arguments will be subject to objection at trial.

### B. Defendant's Fourth Motion in Limine

In its Fourth Motion in Limine (Doc. # 52), the Defendant seeks to exclude any evidence of the truck driver's prior driving history pursuant to Fed. R. Evid. 404(b). The Defendant argues that as provided in Rule 404(b), any evidence of the driver's past behavior is inadmissible to show "conformity" with that behavior on the occasion of the incident at issue in this suit. The Plaintiff responds that she does not plan to introduce any evidence of the driver's past driving record, but only wants to question him about his experience driving liquid tankers as the mechanics may be different than driving trucks carrying solids. The Defendant in reply does not object to questions about the driver's experience driving liquid tankers, but does object to any potential speculation by the Plaintiff about the effect the liquid cargo had on the accident.

Thus, the only type of evidence at issue in this Motion in Limine is argument or evidence

by the Plaintiff that the fact that the driver was driving a liquid tanker contributed to the accident. The Motion will be GRANTED to the extent that the Plaintiff may not make any type of argument or offer this type of evidence without laying a proper foundation, and DENIED to the extent that the Plaintiff may ask the driver about his past experience driving liquid tankers.

    **C. Defendant's Fifth Motion in Limine**

The Defendant seeks to exclude mention of, and any exhibits supporting, pre-accident cellular phone use by driver Michael King and, if the cell phone use evidence is excluded, also seeks to exclude the evidence concerning the Defendant's company policy on cell phones. The Defendant seeks to exclude this evidence pursuant to Fed. R. Evid. 402, 403, and 404(b). The Defendant urges the court to require an offer of proof outside of the presence of the jury before the Plaintiff is allowed to elicit any evidence about cellular phone usage.

The Defendant contends that the phone company records of Michael King's cellular phone usage on the day in question indicate that its driver ended a call at 4:56 a.m., while the police accident report lists the time of the accident at 5:05 a.m. Kenan cites to an unpublished case from the Court of Appeals of Michigan, *McCuish v. Jaffe*, No. 286807, 2009 WL 3050900, at *2 (Mich. App. Sept. 24, 2009) for the proposition that the cellular phone usage has no relevance in the case because the call ended before the accident occurred. In *McCuish*, the court reasoned that billing records indicated that she had used her phone several times between 3:49 p.m. and 4:39 p.m., but absent any evidence as to the exact time of the accident, or a witness's observation that she was on her phone at the time, the jury could only speculate that defendant was in fact on her phone when the accident occurred. The court concluded that a reasonable inference could not be drawn that the driver was distracted by talking on a cell phone. *Id.* at *2.

The Plaintiff responds first that the Defendant's math is incorrect and that the cellular

3

phone company records state that the driver began a call at 4:14 a.m. and that the call lasted 47 minutes, which would mean that the call ended at 5:01 a.m. The Plaintiff also states that the police report is inadmissible hearsay, but that the driver's log states that the accident happened at 5:00 a.m. The Plaintiff argues, therefore, that the phone records are relevant evidence, and further that the cellular phone records can be used to impeach the driver because he testified in his deposition that he never used his cell phone on the day of the wreck until he called 911. The Plaintiff finally contends that the evidence of the cellular phone records can be used to test the accuracy of the driver's memory.

In reply, the Defendant concedes that the phone records may indicate that the call lasted 47 minutes, rather than the 42 minutes it read the evidence to state, but argues that there still is insufficient proof that the call occurred at the time of the accident. The Defendant points out that the log relied on by the Plaintiff, which states that the accident occurred at 5:00, is recorded in fifteen minute increments, and also states that the 911 calls reporting the accident were made at 5:20. The Defendant argues, therefore, that the accident is more likely to have occurred closer to 5:20, but that in any event, there is no proof that the accident happened at a time during which the phone call was occurring. The Defendant further contends that because the use of a hands free cellular device is not a violation of law, the company policy regarding cell phone usage is not relevant.

At most, the court has been presented with evidence that the collision at issue occurred before 5:20 a.m., but the evidence does not establish an exact time. The court agrees with the Defendant that offering evidence that the driver was engaged in cellular phone communication which ended at 5:01 is of limited probative value in the absence of evidence establishing a more exact time of the collision. A reasonable jury cannot draw an inference from the fact that the

driver had used the cellular phone at 5:01 that cellular phone usage had a role in the collision at issue. Any relevance the cellular phone call has under these circumstances is of such limited probative value that it is substantially outweighed by the danger of unfair prejudice under Rule 403. The court also agrees that without evidence as to the time of the accident, allowing evidence of driver's cellular phone usage to be used to impeach his credibility, or to test the accuracy of his memory would likewise be precluded under Rule 403 balancing. Finally, if there is insufficient evidence from which to conclude that the driver engaged in a cellular phone communication during the collision, the company's cell phone use policy is of minimal relevance, and is due to be excluded under Rule 403.

      Therefore, Defendant's Fifth Motion in Limine will be GRANTED, but if during the presentation of evidence at trial, evidence by eyewitnesses more exactly pinpoints the time of the collision so that the probative value of the driver's cellular phone communication becomes greater, the Plaintiff may again take up the issue of the admissibility of the cell phone usage outside of the presence of the jury.

    **D. Defendant's Sixth Motion in Limine**

      In its Sixth Motion in Limine (Doc. # 54), the Defendant seeks to exclude any witness testimony concerning the truck driver's post-accident conduct unrelated to the accident itself. Specifically, the Defendant seeks to exclude anticipated testimony to the effect that Michael King, the driver, acted in a confrontational manner and cursed at the Plaintiff. The Defendant does not object to testimony on the subject of the accident itself, including any admissions of fault. The Plaintiff responds that her evidence as to the driver's post-accident conduct and statements conflict with his own deposition testimony, and therefore the evidence goes to his credibility. The Plaintiff adds that this evidence falls under exceptions to hearsay as a present

sense impression (Fed. R. Evid. 803(1)) and an excited utterance (Rule 803(2)).

In isolation, evidence going only to whether the driver was confrontational or cursing is not relevant to the issue of fault or negligence, except to the extent that either party admitted fault or made statements about the circumstances of the accident.  The Plaintiff's argument is that the expected testimony of its witnesses conflicts with the expected testimony of the driver, and therefore the testimony is relevant to his credibility.  Although any party "may attack the witness's credibility," Fed. R. Evid. 607, there are limits on the procedures by which credibility can be attacked.  For example, it is permissible to inquire into specific instances of conduct going to character for truthfulness on cross examination, but extrinsic evidence may not be introduced as to these instances of conduct.  Fed. R. Evid. 608(b).

The evidence at issue here, however, does not go to specific instances of the driver's conduct that concern character for truthfulness in general, as contemplated by Rule 608(b).  Instead, the specific instances of conduct in the testimony would serve to contradict the driver's account of the events immediately after the accident occurred.  The extrinsic evidence at issue will only contradict the driver's testimony if he testifies about his post-accident conduct by stating that he was helpful or that he did not curse or otherwise act in a confrontational manner.  For the same reasons outlined above, testimony to that effect is not relevant to any material issue in the case.  In the event that the Defendant somehow "opens the door" to this testimony, the Plaintiff's contradictory extrinsic evidence would become admissible.  *See Phillips v. Irvin*, No. 05-0131-WS-M, 2007 WL 2310038, at *5 (S.D. Ala. July 27, 2007) ("[I]f a party 'opens the door' to a particular line of inquiry by making certain statements in its case in chief, then the other party may be allowed to offer rebuttal testimony to contradict those statements.").

For these reasons, the Motion in Limine will be GRANTED to the extent that the Plaintiff

may not offer or elicit testimony about the driver's post-accident conduct unless it is relevant to the cause of the accident or the Defendant first opens the door to testimony concerning the driver's behavior that the Plaintiff can contradict with rebuttal testimony.

### E. Defendant's Seventh Motion in Limine

In its Seventh Motion in Limine (Doc. # 55), the Defendant seeks to exclude any discussion of the origin and cause of the fire in the Plaintiff's vehicle. The Defendant argues that the fire in the vehicle could have originated in many ways and it is pure speculation to say that the fire started because fuel leaked from the defendant's tanker. The Defendant says that the Plaintiff has produced no expert to explain the cause and origin of the fire.

The Plaintiff responds that the driver testified in his deposition that fuel leaked from the truck and he saw the fuel ignite. He stated in his deposition that gas ignited that came from tubes on the truck. (Doc. #71-1 at 85:1–8). He also stated that when he got out of his truck, he ran away from the truck because fuel was still leaking. (Doc. #71-1 at 86:22–87:4). The Plaintiff testified that her car was wedged under the tanker truck and a pipe burst on the truck and started shooting fuel on to her car. (Doc. #76-1 at 46:13–17).

The Plaintiff states that she does not intend to offer testimony as to what ignited the fuel because that is unknown, but that there is no logical argument other than that the tanker leaked fuel or that the fuel caught fire.

Although not directly on point, another district court has analyzed similar evidence and provides helpful analysis. In *Reid v. BMW of North America*, 430 F. Supp. 2d 1365 (N.D. Ga. 2006), a service technician brought a product liability action against BMW after the radiator in a car he was working on exploded, and caused boiling fluid to spray on to him, causing burn injuries. The plaintiff's claim was for a manufacturing defect in the radiator and he had expert

7

testimony that the design and materials led to the radiator failure, and the resulting injuries. The defendant argued that the plaintiff did not have expert testimony as to the mechanism of injury or medication causation, and the court determined that a layperson could understand the causation argument that boiling fluid came into contact with the plaintiff's skin. *Id.* at 1371. Similarly, in this case, fact witnesses can testify that fuel leaked on to the plaintiff's car, that there was a visible ignition of that fuel, and that the fire burned the plaintiff. A jury does not need assistance to conclude that the ignited leaked fuel, which was present after the impact of the vehicles, burned the plaintiff, regardless of the cause of the presumed spark that ignited the fuel.

Applying that reasoning here, the court concludes that while the Plaintiff may not offer lay witness opinion testimony as to what caused the fire, the Plaintiff may offer testimony from witnesses with firsthand knowledge as to their observations of leaking fuel, ignition of the fuel, and the fire. The jury will be able to draw its own conclusions from that testimony and does not require expert opinion testimony to do so. The Motion in Limine is due to be GRANTED only to the extent that the Plaintiff may not offer lay opinion causation testimony, but is DENIED as to the facts of leaked fuel, ignition, and the resulting fire.

**F. Defendant's Eighth Motion in Limine**

In its Eighth Motion in Limine (Doc. # 65), the Defendant seeks to exclude any evidence related to the Plaintiff's claimed vocational disability and loss of earning capacity flowing from the accident. This motion is moot because the Plaintiff will not be asking for special damages for either lost wages or loss of future earning capacity, as indicated by her Revised Proposed Jury Instructions (Doc. # 63 at 7). In her Requested Jury Charge Number 6, the Plaintiff requests an instruction that she asks the jury to award damages for the following categories: 1) Physical pain and mental anguish; 2) Permanent injuries; 3) Medical expenses; and 4) Future medical

expenses. (*Id.*)

The court also noted in an order following the pretrial conference that the Plaintiff was not seeking "any future lost wages or earnings." (Doc. # 44 at 1 ¶ 2.)[1] Additionally, in response to the Motion in Limine the Plaintiff states that she is not claiming lost wages nor does she claim vocational impairment. (Doc. # 71 at 13–14.) The Plaintiff only wants to offer "basic testimony" that she can no longer perform massage therapy because of pain. The court infers that this testimony is part of her more general request for damages. Because the Plaintiff is not claiming lost wages or loss of future earning capacity, the Motion in Limine based on specific evidentiary requirements for those types of special damages is moot and will be DENIED.

## CONCLUSION

Accordingly, it is hereby ORDERED as follows:

1. The Defendant's Third Motion in Limine (Doc. # 51) is GRANTED to the extent that Plaintiff's counsel may not make any argument or suggestion that the jurors should place themselves in the Plaintiff's position or the Plaintiff's shoes.

2. The Defendant's Fourth Motion in Limine (Doc. # 52) is GRANTED to the extent that the Plaintiff may not argue that the distinctions between liquid tankers and solid cargo trucks contributed to the accident without laying a proper foundation, and DENIED to the extent that the Plaintiff may ask the driver about his past experience driving liquid tankers.

3. The Defendant's Fifth Motion in Limine (Doc. # 53) is GRANTED to the extent that that Plaintiff's counsel should not seek to introduce any evidence concerning cell phone usage unless evidence by eyewitnesses more exactly pinpoints the time of the

---

[1] The court also notes that the Plaintiff never filed a statement of the amount of lost wages claimed, as instructed by the order. The jury instructions appear to confirm that the Plaintiff is not claiming any amount of special damages for lost wages.

9

collision so that the probative value of the driver's cellular phone communication becomes greater.  In the event that this occurs, the Plaintiff may again take up the issue of the admissibility of the cell phone usage outside of the presence of the jury.

4. The Defendant's Sixth Motion in Limine (Doc. # 54) is GRANTED to the extent that the Plaintiff may not offer or elicit testimony about the driver's post-accident conduct unless it is relevant to the cause of the accident or the Defendant first opens the door to testimony concerning the driver's behavior that the Plaintiff can contradict with rebuttal testimony.

5. The Defendant's Seventh Motion in Limine (Doc. # 55) is GRANTED only to the extent that the Plaintiff may not offer lay opinion causation testimony, but is DENIED as to the facts of leaked fuel, ignition, and the resulting fire.

6. The Defendant's Eighth Motion in Limine (Doc. # 65) is DENIED as moot.

DONE this 16th day of March, 2015.

 /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE